**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICHARD BANDA,

Petitioner,

v.

CALVIN JOHNSON, et al.,

Respondents.

Case No. 2:19-cv-00989-KJD-VCF

**ORDER**

Petitioner Richard Banda, who was sentenced by a Nevada state district court as a habitual criminal to 7 to 20 years after a jury found him guilty of burglary, assault with a deadly weapon, and possession of a controlled substance, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (*See* ECF Nos. 17-16; 27.) This matter is before this court for adjudication of the merits of Banda's second amended petition, which alleges that (1) his trial counsel failed to investigate for witnesses, (2) there was insufficient evidence to prove the burglary and assault charges, (3) his trial counsel failed to assert self-defense against the assault charge, and (4) his trial counsel failed to rebut the victim's assault allegation with Banda's testimony. (ECF No. 27.) For the reasons discussed below, this court denies the petition and a certificate of appealability.

## I. BACKGROUND[1]

J.L.,[2] who was seventeen years old, testified that on February 24, 2017, at approximately 3:30 p.m., he was walking to his house in Las Vegas, Nevada when he saw "a guy walking out

[1]This court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case.

[2]This court only refers to children by their initials. *See* LR IC 6-1(a)(2).

[his] neighbor's garage with something in his hand." (ECF Nos. 17-9 at 25; 17-11 at 10.) That individual, identified as Banda, then "just started walking up the street" and then eventually "started like kind of running up the street." (ECF No. 17-11 at 13–14.) J.L. notified his neighbor, Paul Maineri, indicating to Maineri that "someone went inside [his] garage." (*Id.* at 14.) J.L. pointed which direction Banda had gone, and Maineri started running shirtless after Banda. (*Id.* at 15.) Maineri caught up with Banda about eight houses down the street. (*Id.* at 29.)

Maineri testified that he started working on his truck in his garage after he got off work at 1:30 p.m. on February 24, 2017. (*Id.* at 30–31.) Maineri went inside his house "shortly before 3:30" p.m. for "[s]everal minutes" before hearing J.L. knock on his window. (*Id.* at 33.) After chasing and catching up to Banda, Maineri told Banda to give him back his property. (*Id.* at 36.) Banda reached behind his back and presented a tool that Maineri had been using that afternoon: "an axe, crowbar and hammer tool all in one." (*Id.* at 38.) Maineri reached for the tool, but Banda raised his hand towards his shoulder and swung the tool a total of three times. (*Id.* at 39–40.) Maineri testified that "the first swing was the one that mattered," and the other two were "just not as meaningful as the first one." (*Id.* at 41.) Maineri took a step back, and, after Banda paused for a moment, Maineri "got even bigger and meaner" and instructed Banda to "give [the tool] back right now." (*Id.*) Maineri then took the tool from Banda. (*Id.* at 40.)

Banda asked Maineri, "you're not going to hit me with that, are you?" (*Id.* at 42.) Maineri replied, "I don't need a weapon to kick your ass." (*Id.*) Maineri put the tool in his back pocket and told Banda to "get out of the neighborhood." (*Id.*) Banda threatened to kill Maineri, put his fists up, and "raised up his shirt" as "a symbol of how tough he was." (*Id.* at 43.) Maineri took pictures of Banda, and Banda "turned his fist[s] into middle fingers." (*Id.* at 44.) In an attempt "to buy time" and allow Maineri to retreat, Maineri invited Banda to return to Mainer's house so the two

could fight. (*Id.* at 78–79.) Maineri then called 911, and Banda went to a nearby pick-up truck, pulled out a metal rod, and "started marching up and down the street" saying he was going to "kill th[e] whole neighborhood." (*Id.* at 44–45.) While Maineri was speaking with a 911 operator, Banda left. (*Id.* at 45.)

Officer Antonio Scott of the Las Vegas Metropolitan Police Department testified that he was dispatched to Maineri's residence. (*Id.* at 146–47.) Officer Scott's "purpose was to look for the suspect." (*Id.* at 148.) Officer Scott encountered Banda walking a few streets from Maineri's house. (*Id.* at 149, 163.) Officer Scott testified that Banda appeared to be under the influence of drugs or alcohol. (*Id.* at 155.) Officer Chrisnar Phonn Sok of the Las Vegas Metropolitan Police Department brought Maineri to a "show-up" of Banda, and Maineri "made a positive identification." (*Id.* at 107, 113, 115.) Officer Sok found a small amount of drugs during his search of Banda. (*Id.* at 116.) Saffiatu Turay, a forensic scientist with the Las Vegas Metropolitan Police Department's forensic laboratory, testified the substance was "heroin weighing at 0.165 grams." (*Id.* at 170, 173.)

The jury found Banda guilty of burglary, assault with a deadly weapon, and possession of a controlled substance. (ECF No. 17-13 at 61.) Banda appealed, and the Nevada Court of Appeals affirmed. (ECF No. 17-21.) Banda filed a state habeas petition. (ECF No. 17-24.) The state district court denied Banda's petition. (ECF No. 36-5.) Banda then filed a second state habeas petition. (ECF No. 36-12.) The state district court denied that petition as well, and the Nevada Court of Appeals affirmed the denial. (ECF Nos. 36-19, 36-28.)

## II. GOVERNING STANDARDS OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III. DISCUSSION

### A. Ground 1—trial counsel's failure to investigate for witnesses

In ground 1, Banda alleges that his trial counsel was ineffective for failing to investigate for witnesses. (ECF No. 27 at 5.) Specifically, Banda alleges that if his trial counsel had investigated, she would have discovered two witnesses—Peter Banda, who is Banda's maternal uncle, and John Baza, who is Peter Banda's brother-in-law—who observed the altercation and would have testified that Maineri had been the aggressor. (*Id.* at 6.)

This court previously determined that ground 1 was technically exhausted because it would be procedurally barred in the state courts. (ECF No. 44 at 4.) Banda previously argued that he could demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to excuse the default. (*Id.*) This court found that Banda had met three of the elements of *Martinez*: (1) he had no counsel during his state habeas proceedings, (2) his state habeas petition was the initial proceeding regarding claims of ineffective assistance of trial counsel, and (3) Nevada law requires that a claim of ineffective of assistance of trial counsel be raised in a post-conviction habeas corpus proceeding. (*Id.*) However, this court deferred consideration of the fourth element of *Martinez*: whether the claim of ineffective assistance of trial counsel is substantial. (*Id.*) This court will now determine, pursuant to a *de novo* review, whether ground 1 is substantial. *See Ramirez v. Ryan*, 937 F.3d 1230, 1243 (9th Cir. 2019).

**1. Background information**[3]

In a declaration signed on July 22, 2020, Peter Banda (hereinafter "Peter") declared, *inter alia*, the following: (1) he was at his sister's house on February 27, 2007, and he and John Baza "were working on cars in the garage with the door open," (2) Peter and Baza "heard yelling and what sounded like fighting in the street," (3) Peter and Baza "stepped out of the garage and looked down the street to see [Banda] and a neighbor in a physical confrontation in the middle of the street," (4) "[t]he neighbor had an axe in his hand, and [Banda] had a metal tool of some sort," (5) "[t]he neighbor repeatedly swung his axe at [Banda], while [Banda] held his arms up covering his head and using the tool to deflect any contact from the axe," (6) Banda "was in a defense position during the entire incident, bending in towards himself while protecting his head with his arms," (7) Banda "never swung the tool at the neighbor," (8) Banda "ran away down the street before [Baza] and [Peter] had a chance to intervene," (9) Banda's trial counsel never contacted him, (10) he was "unaware that [Banda] had been charged with assault due to the incident," and (11) he "would have provided all of this information and testified in court." (ECF No. 28-1 at 2.)

In a declaration signed on April 22, 2022, Banda declared that after Maineri took photographs of him, he saw his "uncles, Peter Banda and John Baza, watching the situation." (ECF

[3]The Supreme Court has recently held that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the prisoner can satisfy 28 U.S.C. § 2254(e)(2)'s stringent requirements under AEDPA. *Shinn v. Ramirez*, 142 S.Ct. 1718, 1734 (2022). Although Banda fails to demonstrate that those stringent requirements are met here, he argues that the respondents did not object to this court's consideration of the new evidence presented in this background section and the background sections of grounds 3 and 4. (ECF No. 55 at 17–18.) The respondents' lack of objection is likely due to their answer having been filed on March 22, 2022, and *Shinn* not being decided until May 23, 2022. (*See* ECF No. 51.) Nonetheless, because (1) this court determines that Banda is not entitled to relief even considering this new evidence, (2) following the filing of their answer, the respondents failed to move for leave to advise this court of relevant new authority based on *Shinn*, and (3) considering this new evidence may reduce the likelihood of further litigation, this court considers Banda's new evidence.

No. 56-1 at 3.) Banda also declared that he "explicitly informed [his trial counsel] that [his] two uncles Peter Banda and John Baza saw the altercation with Maineri," however, his "trial counsel never discussed the possibility of calling witnesses to [his] defense." (*Id.* at 4.)

**2. Standard for Ineffective-Assistance-of-Trial-Counsel Claims**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

**3. Analysis**

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Additionally, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* This investigatory duty includes investigating the defendant's "most

important defense" (*Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)), and investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999). In assessing counsel's investigation, the court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Id.* at 689; *see also Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690.

Other than Banda's own self-serving statements that he informed his trial counsel about these witnesses, Banda offers no evidence to support his allegation that his trial counsel was aware of the existence of these witnesses and failed to properly investigate them. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim).

However, even if Banda's trial counsel was deficient, which this court does not decide, Banda fails to demonstrate prejudice. *Strickland*, 466 U.S. at 694. Even if trial counsel had investigated Peter and Baza and presented their testimonies at Banda's trial, Banda fails to demonstrate that the jury would not have found him guilty of assault. According to Peter's declaration, Peter and Baza did not see the confrontation between Banda and Maineri until after Maineri had already taken the tool from Banda. As such, Peter and Baza could not have provided relevant information regarding Banda's swinging of the tool, which was the basis for the assault

conviction. Moreover, it is mere speculation that the jury would have found these witnesses credible due to them being related to Banda. Because Banda fails to demonstrate prejudice, ground 1 is not substantial for purposes of *Martinez*, is procedurally defaulted, and is dismissed.

**B. Ground 2—sufficiency of the evidence**

In ground 2, Banda alleges that there was insufficient evidence to prove his convictions for burglary and assault with a deadly weapon. (ECF No. 27 at 8.) Regarding the burglary charge, Banda argues that there was no witness who saw him enter the garage. (*Id.*) Banda also argues that J.L. was an unreliable witness because his testimony "flip-flopp[ed]," there was considerable distance between him and Banda, and there were obstacles obscuring his view. (*Id.* at 9–11.) And regarding the assault with a deadly weapon charge, Banda argues that the only evidence came from Maineri, and Maineri was an unreliable witness due to the inconsistencies between his statement to the police, his testimony at the preliminary hearing, and his testimony at trial.[4] (*Id.* at 13.)

**1. Standard for Sufficiency-of-the-Evidence Claims**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "*any* rational

[4]Banda also argues that new evidence showed that (1) instead of entering the garage, he picked up the tool on the ground next to the driveway, and (2) Peter and Baza discredit Maineri as the alleged victim. (ECF No. 27 at 11, 15.) However, this court is precluded from considering this evidence that was not before the Nevada Court of Appeals at the time it considered Banda's appeal of his judgment of conviction. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The evidence is to be viewed "in the light most favorable to the prosecution." *See id*. Federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson*. *See Juan H.*, 408 F.3d at 1275 n.13.

**2. State law**

Sufficiency of the evidence claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324 n.16. As is relevant here, Nevada law provides that "a person who, by day or night, enters any . . . outhouse or other building . . . with the intent to commit grand or petit larceny . . . or any felony . . . is guilty of burglary." Nev. Rev. Stat. § 205.060(1). And Nevada law defines assault as "[u]nlawfully attempting to use physical force against another person; or . . . [i]ntentionally placing another person in reasonable apprehension of immediate bodily harm." Nev. Rev. Stat. § 200.471(1)(a).

**3. State court determination**

In affirming Banda's judgment of conviction, the Nevada Court of Appeals held:

> Banda contends the evidence presented at trial was insufficient to support the jury's finding of guilt as to the burglary and the assault with a deadly weapon counts. Specifically, he claims the burglary was not proven because no one saw him enter the garage, the garage was not processed for fingerprints or DNA, and the sightline of the person who saw him leave the garage was obstructed. He claims the assault with a deadly weapon was not proven because the victim did not allege Banda swung the tool at him on the 911 call and the victim was easily able to disarm Banda. We disagree.
>
> When reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). "[I]t is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439

> (1975). And circumstantial evidence is enough to support a conviction. *Lisle v. State*, 113 Nev. 679, 691-92, 941 P.2d 459, 467-68 (1997), *holding limited on other grounds by Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).
>
> A witness told the victim he saw a man leaving the victim's garage with something in his hands. The victim then took off and saw a man walking down the road in the direction pointed out by the witness. The witness testified the man walking down the road was the same man he saw leave the garage. This man was Banda. The victim stopped Banda and confronted him. Banda pulled an axe/hammer from behind his back and swung it at the victim. The victim recognized the axe/hammer as a tool from his garage. The victim was able to disarm Banda and took pictures of Banda and the car he drove off in. Banda was later apprehended and arrested. The victim identified Banda as the person who assaulted him
>
> The jury could reasonably infer from the evidence presented that Banda burglarized the victim's garage and assaulted him with the use of a deadly weapon. *See* NRS 200.471(1)(a), (2)(b); NRS 205.060(1). It is for the jury to determine the weight and credibility to give testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

(ECF No. 35-25 at 2–4.)

**4. Analysis**

J.L. testified that he "didn't see [Banda] inside [Maineri's garage], [he] just saw him walking out." (ECF No. 17-11 at 20.) And Maineri testified that he placed the tool, which Banda was later found carrying, inside his garage before going inside his house. (*Id.* at 56.) Viewing this evidence "in the light most favorable to the prosecution" (*Jackson*, 443 U.S. at 319), which supports a finding that Banda entered Maineri's garage with the intent to steal the tool, the Nevada Supreme Court's determination that sufficient evidence supported Banda's burglary conviction was not based on an unreasonable determination of the facts and constitutes an objectively reasonable application of clearly established federal law. *In re Winship*, 397 U.S. at 364; *Juan H.*, 408 F.3d at 1274; Nev. Rev. Stat. § 205.060(1).

And regarding Banda's assault with a deadly weapon conviction, Maineri testified that as he reached for the tool, Banda raised his hand towards his shoulder and swung the tool a total of three times at Maineri. (ECF No. 17-11 at 39–40.) Viewing this evidence "in the light most favorable to the prosecution" (*Jackson*, 443 U.S. at 319), which supports a finding that Banda attempted to use physical force against Maineri, the Nevada Supreme Court's determination that sufficient evidence supported Banda's assault with a deadly weapon conviction was not based on an unreasonable determination of the facts and constitutes an objectively reasonable application of clearly established federal law. *In re Winship*, 397 U.S. at 364; *Juan H.*, 408 F.3d at 1274; Nev. Rev. Stat. § 200.471(1)(a).

Banda is not entitled to federal habeas relief for ground 2.

**C. Ground 3—trial counsel's failure to assert self-defense**

In ground 3, Banda alleges that his trial counsel was ineffective for failing to assert self-defense against the assault charge. (ECF No. 27 at 15.) Specifically, Banda argues that when Maineri entered his personal space, he had the right to swing the tool in self-defense. (*Id.* at 17.) Alternatively, because Banda believed the tool had been discarded, he had the right to prevent Maineri from taking what Banda believed to be his new property. (*Id.*)

As with ground 1, this court previously determined that ground 3 was technically exhausted because it would be procedurally barred in the state courts. (ECF No. 44 at 4.) Banda previously argued that he could demonstrate cause and prejudice under *Martinez* to excuse the default. (*Id.*) And as with ground 1, this court found that Banda had met three of the elements of *Martinez* but deferred consideration of the fourth element of *Martinez*: whether the claim of ineffective assistance of trial counsel is substantial. (*Id.*) This court will now determine, pursuant to a *de novo* review, whether ground 3 is substantial. *See Ramirez*, 937 F.3d at 1243.

**1. Background information**

In a declaration signed on April 22, 2022, Banda declared that he was walking to his uncle's house "when [he] noticed a metal tool on the sidewalk." (ECF No. 56-1 at 2.) Banda "picked it up thinking someone had thrown it away" because it "was rusted and looked discarded." (*Id.*) "Moments later, [Banda] noticed a shirtless male chasing [him] down from behind, screaming at [him]." (*Id.* at 3.) Banda was afraid. (*Id.*) Maineri "aggressively grabbed the tool from [Banda's] hand" after Banda held the tool out. (*Id.*) Banda "never swung the tool at Maineri," rather Maineri swung the tool at Banda after accusing Banda of stealing it. (*Id.*) Banda's trial counsel "never called [him] and never picked up [his] calls." (*Id.* at 4.) Instead, Banda's trial counsel "visited [him] once to discuss the case." (*Id.*) Banda told his trial counsel that he was innocent. (*Id.*)

**2. Analysis**

Banda's trial counsel made the following argument during opening statements: "the evidence is going to show that it's Mr. Maineri who was angry, who was trying to be physical, who was confrontational," and Banda stayed calm until "Mr. Maineri continued his threats of violence." (ECF No. 17-9 at 207.) Similarly, Banda's trial counsel made the following argument during closing argument: Maineri "was the one who was maintaining aggression, who was threatening to fight, who was going to kick someone's ass." (ECF No. 17-13 at 43–44.) Based on these arguments, it appears that trial counsel could have gone a step further and argued self-defense under Nevada law. *See* Nev. Rev. Stat. § 193.240 (1), (2) (allowing for self-defense "[t]o prevent an offense against his or her person" or "[t]o prevent an illegal attempt, by force, to take or injure property in his or her lawful possession"); *see also Davis v. State*, 321 P.3d 867, 873–74 (Nev. 2014) ("[J]ustifiable battery is the battery of a human being, which does not result in death and is

necessary for self-defense against one who manifestly intends to commit a felony by using violence or surprise.").

However, even if Banda's trial counsel was deficient, which this court does not decide, Banda fails to demonstrate prejudice. *Strickland*, 466 U.S. at 694. Even if Banda's trial counsel had argued that Banda acted in self-defense and had Banda testify to his version of events, Banda fails to demonstrate that the jury would have found him not guilty of assault. Indeed, Maineri testified that Banda swung the tool at him three times, threatened to kill Maineri, put his fists up, raised up his shirt in a threatening manner, pulled a metal rod out of a nearby pickup truck, and announced that he was going to kill the whole neighborhood. Based on Maineri's testimony as to Banda's aggressive actions—even if Maineri also acted aggressively—it is mere speculation that the jury would have accepted Banda's self-defense argument. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). Ground 3 is not substantial for purposes of *Martinez*, is procedurally defaulted, and is dismissed.

**D. Ground 4—trial counsel's failure to rebut testimony**

In ground 4, Banda alleges that his trial counsel was ineffective for failing to rebut Maineri's assault allegation with Banda's testimony. (ECF No. 27 at 18.) As was discussed in ground 3, Banda argues that he would have testified that (1) he believed the tool, which was not in the garage, had been discarded, and (2) Maineri was the aggressor and Banda was simply acted in self-defense. (*Id.* at 19.)

As with grounds 1 and 3, this court previously determined that ground 4 was technically exhausted because it would be procedurally barred in the state courts. (ECF No. 44 at 4.) Banda previously argued that he could demonstrate cause and prejudice under *Martinez* to excuse the default. (*Id.*) And as with grounds 1 and 3, this court found that Banda had met three of the

elements of *Martinez* but deferred consideration of the fourth element of *Martinez*: whether the claim of ineffective assistance of trial counsel is substantial. (*Id.*) This court will now determine, pursuant to a *de novo* review, whether ground 4 is substantial. *See Ramirez*, 937 F.3d at 1243.

**1. Background information**

During the trial, the state district court canvassed Banda about testifying:

> THE COURT: . . . Mr. Banda, I must instruct you that under the Constitution of the United States and under the Constitution of the State of Nevada, you cannot be compelled to testify in this case. Do you understand what that means?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. Also, you may at your request give up that right, however, and take the witness stand and testify. If you do, you'll be subject to cross-examination by the Deputy District Attorney, and anything that you may say, be it on direct or cross-examination, will be the subject of fair comment by the Deputy District Attorney when they speak to the jury in their closing arguments; do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. If you choose not to testify, I will not permit the Deputy District Attorney to make any comments to the jury because you have not testified. Do you understand what I mean by that?
> THE DEFENDANT: Yes.
> THE COURT: Okay. If you elect not to testify, the Court will instruct the jury, but only if your attorney specifically requests as follows: . . . the law does not compel a defendant in a criminal case to take the stand and testify and no presumption may be raised and no inference of any kind may be drawn from the failure of your not testifying. Do you understand?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. Do you have any questions about these rights before we go any further?
> THE DEFENDANT: No.
> THE COURT: Okay. Also, you're further advised that if you do have a felony conviction, and more than ten years has not elapsed from the date that you have been convicted or discharged from prison, parole or probation, whichever is later, and the defense has not sought to preclude them from coming before the jury, and you elect to take the stand and testify, the Deputy District Attorney in the presence of the jury will be permitted to ask the following questions: Have you been convicted of a felony? What was that felony? And when did it happen? However, I won't let them get into any details; do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. That's something that you need to think about and discuss that with your attorney before - - and I'm going to ask you, again, and when the time comes, if you choose to testify, okay? All right.

(ECF No. 17-11 at 178–80.) The following day, the state district court asked Banda if he "had an opportunity overnight to consider whether or not [he was] going to be testifying or not." (ECF No. 17-13 at 16.) Banda responded, "[b]y taking her advice, I'm not going to testify." (*Id.* at 17.)

**2. Analysis**

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). And this decision of whether to testify on his own behalf is one "the accused has the ultimate authority to make." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Here, the state district court properly canvassed Banda about his right to testify. (*See* ECF Nos. 17-11 at 178–80; 17-13 at 16–17.) And although Banda's trial counsel apparently advised Banda not to testify, it was ultimately Banda's decision—not his trial counsel's decision—to not testify. Additionally, it appears that Banda's trial counsel's advice not to testify could have been based, at least in part, on Banda having two prior felony convictions from 2012: possession of stolen property and attempted burglary. (ECF No. 35-9.) In fact, the possession of stolen property conviction regarded Banda's possession of "miscellaneous tools." (ECF No. 56-2.) Banda's trial counsel could have reasonably concluded that the introduction of these felony convictions by the prosecutor, which resembled Banda's charges in his instant case, would have been prejudicial. Accordingly, Banda fails to demonstrate that his trial counsel acted deficiently. *Strickland*, 466 U.S. at 688. Consequently, ground 4 is not substantial for purposes of *Martinez*, is procedurally defaulted, and is dismissed.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Banda. Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA). This court has sua sponte evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See*

28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## V. CONCLUSION[5]

IT IS THEREFORE ORDERED that the second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that Petitioner is denied a certificate of appealability.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment accordingly and close this case.

Dated: September 12, 2022

KENT J. DAWSON
UNITED STATES DISTRICT JUDGE

[5]Banda requests that this Court conduct an evidentiary hearing. (ECF No. 27 at 20.) Banda fails to explain what evidence would be presented at an evidentiary hearing. Furthermore, this court has already determined that Banda is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Thus, Banda's request for an evidentiary hearing is denied.